## EMBREY v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 8, 1951.

W. D. Bratcher, Greenville, for appellant.

A. E. Funk, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

The appeal is from a judgment of conviction of storehouse breaking with a penalty of five years imprisonment.

The appellant labors under the misconception he was charged with and convicted of grand larceny. He argues the indictment was bad because it does not charge that the goods were taken or carried away without the consent of the owner or against his will. He also argues he should have had a directed verdict of acquittal because the evidence did not prove that element of the crime. The indictment clearly charges Shelby Embrey, the appellant, Chesley Booth and Royce Engler with the crime of "feloniously breaking and entering into a storehouse building with the felonious intent to take and steal therefrom property of value." This is under KRS 433.190. The crime does not embrace larceny. Young v. Commonwealth, 245 Ky. 117, 53 S.W.2d 206. The gravamen of the crime is the breaking with the intent to steal, and it is not essential that any property shall have been taken. Norris v. Commonwealth, 307 Ky. 675, 212 S.W.2d 120.

Shortly after midnight of July 25, 1950, the glass in a door in a clothing store in Central City was smashed and merchandise to the value of about $1,500 was taken. The defendant, who admits to drinking heavily that night, was with Chesley Booth at a pool room shortly before midnight. He hired a taxicab driven by Engler to a point near the railroad, a short distance from the store. The three men were arrested soon afterward in Owensboro with the clothing in their possession. A woman living across the street from the store heard the falling glass and, looking out her window, saw a man with a white shirt and dark trousers walk away fast with something in his arms. He was soon followed by another man wearing a red shirt and dark trousers also carrying something. A pedestrian saw the man with the red shirt come out of the store with a load of clothing. Appellant was wearing a white shirt and Booth a red shirt that night.

The defendant testified he was asked by Booth to get him a taxicab, saying he had some whiskey up on the corner where they were to meet. He got the cab and went there and waited. Booth finally came and gave Engler a bottle of liquor and told him to go to Owensboro, asking the defendant to go along. "I was pretty high and that was just a trip to Owensboro," said he; so he went along. He was asleep when they reached that city, and, "I got the surprise of my life when the officers found the trunk of the car loaded with clothing." Engler testified Booth was waiting at the meeting point and loaded "some stuff" in the trunk of the car; that the defendant, Embrey, never got out of the car from the time they left the taxi stand. Booth testi-

fied that he alone committed the crime and exonerated the appellant.

It is very apparent that the question of the accused's guilt was for the jury.

■ The Commonwealth's Attorney stated in the closing argument: "The same blood that runs through the veins of the defendant runs through my veins. I told Mr. Embrey (indicating the defendant's father) that I would prosecute this boy the same as any other, and I intend to do it." He further stated, "They don't rob the banks now like they used to. They used to do it at night. They would go in and blow the safe. Now they do it by leaving somebody out in the car to watch while the other goes in and sticks a gun in the face of the cashier and orders the money." Following this statement, the attorney read the instruction on aiding and abetting.

Neither statement was relevant or proper, but we do not think either was in any way prejudicial to the defendant's substantial rights.

The judgment is affirmed.